IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DIANA COURTS,                    )<br>                                  )<br>           **Plaintiff,**            )<br>                                  )<br>v.                                )<br>                                  )<br>CAROLYN COLVIN,                   )<br>Commissioner of the Social        )<br>Security Administration,          )<br>                                  )<br>           **Defendant.**          ) | Case No. CIV-24-016-SPS |

**OPINION AND ORDER**

The claimant Diana Courts requests judicial review pursuant to 42 U.S.C. § 405(g) of the denial of benefits by the Commissioner of the Social Security Administration. She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*.

§ 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Claimant was born on December 4, 1958, and was 62 years old on the alleged disability onset date. (Tr. 174). She was 64 years old at the time of the administrative hearing. (Tr. 32). She has completed her high school education and has past relevant work experience as an outpatient receptionist. (Tr. 38-39, 55, 198). Claimant alleges she has been unable to work since November 19, 2021. (Tr. 17, 174).

## Procedural History

Claimant filed applications for Title II disability insurance benefits, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 15). Her applications were denied. ALJ Doug Gabbard, II held an administrative hearing on April 19, 2023 (Tr. 32-59), and determined that Claimant was not disabled in a written decision dated May 26, 2023. (Tr. 12-31). The Appeals Council denied review, and the ALJ's written opinion became the final decision of the Commissioner for purposes of appeal.

## Decision of the Administrative Law Judge

In the May 26, 2023, decision, the ALJ made his decision at step four of the sequential evaluation. At step two, the ALJ found that Claimant had several severe physical impairments, including rheumatoid arthritis, status post right knee arthroscopic surgery, and right foot hallux valgus deformity (20 CFR 404.1520(c)). (Tr. 17). The ALJ considered Claimant's non-severe impairments including chronic lymphatic leukemia, leukocytosis, migraines/headaches, status post hysterectomy, GERD, dermatophytosis of nail, carpal tunnel syndrome (CTS), irritable bowel syndrome (IBS), hypothyroidism, bilateral cataract surgery, radial keratotomies, nicotine dependence, and osteoarthritis. (Tr. 17-18). Finally, the ALJ considered Claimant's "medically determinable mental impairment of depressive/bipolar disorder" and found it did not cause "more

than minimal limitation in her ability to perform basic mental work activities and [was] therefore nonsevere." (Tr. 18).

Next, the ALJ found that Claimant's impairments did not meet a listing. (Tr. 19). At step four, the ALJ found that Claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following qualifications: occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and frequent bilateral handling and fingering. (Tr. 20). Lastly, the ALJ proceeded to step four and determined that Claimant was not disabled because she could return to her past relevant work. (Tr. 25).

## Review

During the relevant period the medical evidence primarily pertains to Claimant's treatment for rheumatoid arthritis ("RA"). Rheumatologist Dr. Jalil Basmah, M.D., diagnosed seronegative RA in mid-2020. (Tr. 376). With methotrexate, Claimant reported feeling "much better." (Tr. 370). However, after she developed headaches (which providers believed were a side effect of methotrexate), she stopped taking it in mid-2020. (Tr. 381, 396, 402). She then responded well to other RA treatment: Dr. Basmah noted her "significant improvement" with leflunomide. (Tr. 393, 400); Plaintiff reported no RA flares between April 2021 and February 2022 (Tr. 403, 506); and Dr. Basmah wrote she "ha[d] low disease activity/remission." (Tr. 510).

While Claimant's treatment primarily pertained to her RA, she also complained of right foot pain due to a bunion in early 2020; treatment included steroid injections and a walking boot. (Tr. 336-37). And in mid-2020, she complained of headaches. (Tr. 378).

In mid-2022, Claimant said she felt well overall, but her migraine headaches had returned. (Tr. 694). Throughout the relevant time period, Claimant reported severe, recurrent migraines and headaches which interfered with her ability to function. Her headaches were reported to be both

chronic and frequent, at times near daily. (Tr. 378, 553, 694). Claimant described her headaches as being frontal in nature, going to the top of her head. (Tr. 378, 553). She reported sensitivity to light ("photophobia"), noise ("phonophobia"), and movement ("kenesiophobia") but not to odors ("osmophobia"). (Tr. 553). Her headaches were also accompanied by throbbing (Tr. 378), and nausea. (Tr. 553). A brain magnetic resonance imaging ("MRI") study showed white matter changes that might be related to migraines. (Tr. 550). Later that year, Claimant told neurologist Dr. John Kareus, D.O., she had experienced headaches for many years, but they had recently worsened. (Tr. 553). Dr. Kareus was concerned that Claimant's headaches were the result of medication overuse. (Tr. 554). Other than some tenderness on her head, examination findings were normal. (Tr. 555-56).

The record reveals Claimant was prescribed numerous medications including Ubrogepant (Tr. 380), Sumatriptan (Tr. 964), Rizatriptan (Tr. 553), Amitriptyline (Tr. 556), and Aimovig injections (Tr. 299) for her headaches; all of which failed to give her significant and sustained relief. Dr. Kareus prescribed Amitriptyline; if that did not work, he believed Claimant would be a candidate for Botox injections. (Tr. 556).

Claimant did in fact undergo multiple BOTOX injections for migraine headaches (Tr. 314), with the ALJ confirming and acknowledging the treatment in his decision. (Tr. 22, 317). "Intervention with BOTOX is particularly significant because it supports [Claimant's] complaints of migraine frequency and duration as treatment with BOTOX injections is only FDA-approved in adult patients with chronic migraines occurring fifteen (15) or more days per month, each lasting four (4) or more hours." (Doc. 11 at 4-5).

Claimant contends, *inter alia*, that the ALJ erred in assessing her RFC and the Court agrees. "The RFC assessment must include a narrative discussion describing how the evidence supports

each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (citing *Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

  The ALJ considered Claimant's migraine headaches to be a medically determinable impairment; despite his finding that the record did "not establish that [the] impairment reached the severity standard under the regulation." (Tr. 17-18). However, as the 10th Circuit has held, "[e]ven if an impairment is not severe, it does not become irrelevant." *Mushero v. Astrue,* 384 F. App'x 693, 695 (10th Cir. 2010). Specifically, an RFC determination must account for limitations imposed by both severe and non-severe impairments. 20 C.F.R. § 404.1545(a)(2), 20 C.F.R. § 416.945(a)(2). A conclusion that a claimant's impairments are non-severe at step two is not an RFC assessment and "does not permit the ALJ simply to disregard [non-severe] impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Suttles v. Colvin*, 543 F. App'x 824, 825-26 (10th Cir. 2013) (internal citations and quotation omitted). *Id.* In other words, "the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013) *citing* "Social Security Ruling (SSR) 96-8p.

  The holdings of the 10th Circuit are consistent with SSR-19's procedures that explain, "We must consider and discuss the limiting effects of all impairments and any related symptoms when assessing a person's RFC." Notably, SSR 19-4p goes on to explain, "[f]or example, symptoms of

a primary headache disorder, such as photophobia, may cause a person to have difficulty sustaining attention and concentration." Photophobia, as mentioned *supra*, was a symptom documented in the record that was not considered by the ALJ in his decision. Moreover, consistent with the record, Claimant testified that she still experiences headaches "nearly every day," that they can last all day long, and that sometimes as a result she has to "just stay in the bedroom with the door closed and lights off." (Tr. 48). Claimant further testified that when she's having a bad migraine "any little noise, sound, or the lights" are triggering and cause further discomfort. *Id.* The evidence does not commensurate with the ALJ's RFC allowing for light work with no corresponding environmental limitations. The ALJ failed to properly account for the limiting effects of Claimant's migraine headaches.

## Conclusion

In summary, the Court finds the correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERD this 15th day of January, 2025.**

                                       **STEVEN P. SHREDER**
                                       **UNITED STATES MAGISTRATE JUDGE**